The first case on the calendar is United States v. Effie Effie Amato. I will hear counsel for appearances. Heather Ross, representing Angelo Effie Amato. Good morning, Your Honor. This is Eugenia Coles from the District of Vermont for AFALI of the United States. Thank you. We'll hear from a talent. Thank you, Your Honor. May it please the Court. I am representing Mr. Effie Amato in this matter. And the essence of the matter before the Court this morning to which I'm going to devote my time is the violation of the Speedy Trial Act in this case. We have other arguments submitted in our brief. If the Court has questions about those remaining arguments, I would be happy to answer those, but will devote most of my time to the Speedy Trial Act violation. In this case, because the Speedy Trial Act was violated, the case should be dismissed with prejudice. In this case, the jury draw should not be considered the commencement of the case because there was an impermissible start and stop plan enacted by the District Court. In this particular case, the District Court recognized on September 4th that there were 31 days left on the Speedy Trial Clock. The District Court enacted a plan to set a jury draw on October 3rd in order to be within the time frame of the Speedy Trial Clock. And at the same time, the Court advised the parties that the earliest the presentation of evidence could commence due to the Court's schedule was 54 days after that jury draw and 52 days after the Speedy Trial Clock otherwise expired. This delay between the jury draw and the presentation of evidence is an impermissible start and stop plan. Counsel, didn't the defendants get new counsel in this period? The defendant requested and was granted new counsel on September 4th. At that hearing on September 4th, when the Court granted the defendant's motion for new counsel, the defendant nonetheless made clear to the Court that despite his request, he was not agreeing to toll time on the Speedy Trial Clock. The Court acknowledged that the defendant was not agreeing to that and agreed not to exclude time. The defense counsel clarified. In other words, the clock would begin ticking again today, meaning September 4th. The Court responded it would. At no point in time did the defendant's new counsel request an exclusion of time under the Speedy Trial Act for preparation or other purposes. Didn't the new counsel make some motions during that period? The new counsel did file a motion in limine on November 21st. However, by that point in time, the Speedy Trial Clock had long expired. So the motion at that point in time does nothing to toll the clock because it is already exhausted at that point. This was a one-day, maybe one-and-a-half-day trial, so it was by no means a lengthy or complicated trial. And as stated, neither defense counsel nor defendant at any time requested an exclusion from the Speedy Trial Clock. And in fact, the Court on September 4th ordered that there would be no such exclusion from that point forward. Counsel, are you familiar with United States v. Patton, a Second Circuit case? Your Honor, I'm not sure off the top of my head if I am familiar with United States v. Patton. Well, it stands for the principle that he has to make his motion before the trial begins. Yes, Your Honor. So I am certainly familiar with that concept that the defendant is to make his motion before the trial begins. In this case, the defense was constrained by the other principle that the defendant is not to make its motion to dismiss the indictment for Speedy Trial Act purposes until the Speedy Trial Clock has expired. So here, at the time of the jury draw, it had not expired. The clock expired between the time of the jury draw and the presentation of evidence. Thus, the motion in this case was timely made given the constraint that it must be filed after the clock has expired. Now, in this particular case, the Court set forth a plan, an intention, knowing what the Speedy Trial Clock was, to have this period of delay. And the reasoning for the period of delay between the jury draw and the presentation of the evidence was that the Court's own schedule. That is not a sufficient reason. In addition, after the defendant made his motion to dismiss the indictment for the Speedy Trial Act violation on November 21st, the Court attempted to justify the violation with a non-protunct order excluding time between September 4th and October 3rd from the Speedy Trial Clock. However, that retroactive attempt to justify the violation should not be allowed in accordance with this Court's law that prohibits an ends-of-justice retrospective application for precisely these reasons. What controls should be the Court's September 4th order, which said that the Court would not be excluding time from that point forward. The issue of the violation then becomes whether the Court, once there is a violation, should dismiss the case with or without prejudice. We submit that the statutory factors enable this Court to determine that the dismissals should be with prejudice in the first instance. For example, most importantly in looking at the seriousness of the offense, here we're talking about an airman flying without a license. There's no evidence that he was engaged in smuggling contraband as part of this offense. There is no evidence that the reason he didn't have a license had anything to do with his ability to fly safely. This offense clearly seems to be at the less serious end on the spectrum of offenses, not a crime of violence. Although it was a violation of his supervised release from Iowa, wasn't it? It was, yes, Your Honor, a violation of his supervised release from Iowa. Again, however, in contrast to the kinds of offenses which this Court has found to be serious,  this Court understandably has been concerned about firearms offenses, drug trafficking offenses, things where, as this Court said in Burke, it was a life-threatening offense with the use of firearms. Counsel, I think your time has expired. Have you reserved any time for... I have, Your Honor. I've reserved two minutes. Thank you. Okay, so we'll turn to the government. Thank you. Thank you, Your Honor. Again, this is Eugenia Coles from the District of Vermont appearing for the United States. May it please the Court, Your Honor, I'll begin also with the speedy trial issue. In this case, Defendant Efthimiados received a speedy trial. No matter how the clock is calculated and whether or not the Court's continuance, which was granted in August of that year, is given credit, jury selection on October 3rd happened before the expiration of the speedy trial period. As this Court has recognized, that is the beginning of the trial, and it fell within the Speedy Trial Act. Now, the defense challenges this case claiming that the delay between jury selection and the start of evidence created an impermissible stop-and-start plan that itself results in a violation. But, Your Honor, that does not look at the actual time frames and the structuring of this case. The actual time frame between the expiration of the true period, if we were to exclude the jury draw day, was only eight days. That's well within the time frame for a stop-and-start that this Court has approved before. Counsel, I have a question about your calculation of the Speedy Trial Act. In your brief, you originally say there were 34 days left on the clock on September 4th, and then later you say there were 34 days left on the clock on October 3rd. Isn't the first statement correct so that your calculation of the discrepancy between your calculation and the defense's calculation is the result of that mistake? Well, Your Honor, I think that the issue is whether anything changed at that September 4th hearing. It's the government's position, and I think it's supported by the docket entries in this case, that a continuance of the Speedy Trial Act was issued in August. Before that September hearing, defense had moved to continue the trial date from September 11th for the reasons of having additional time to prepare, and the Court granted that motion. Now, there was no formal order entered. The Court requested an order that was not submitted by defense counsel, presumably because of the change in counsel at that time. But at the time the parties appeared on September 4th, that continuance from the August grant of the motion to the day of the jury draw was already in place. So I think the correct position would be that the same number of days existed on the Speedy Trial Clock at the time of the September 4th hearing as remained at the time of the jury draw. That's where we're getting that 34 number from. I see, and so that is assuming the NUNC protunc order is effective also. It does, Your Honor, but the government would also suggest that the validity of that August 17th order does not turn only on the NUNC protunc explanation. I believe the case law says that it's important that findings are made by the Court before the time of a motion to dismiss. Excuse me. I apologize, Your Honor. Go ahead. Suppose it did turn upon whether a NUNC protunc order is effective. Then what? Well, we would certainly say that the NUNC protunc order should be considered effective because in this case it is truly a memorialization of the reasoning of the Court rather than, as the defense describes it, a retrospective grant or explanation. I'm sorry, but what did it mean when it looks like on September 4th the defendant's lawyer said the clock would begin ticking again today and the Court seemed to agree on that? That's correct, Your Honor, and I think there's some confusion there and it's important to look at the context. First, what we have is the Court agreeing to a statement from the defense. It's not the Court's words that the clock begins ticking. The defense proposes that and the judge says yes. In light of the fact that a continuance had already been granted, I think the most logical way to understand it is that the Court is agreeing no additional time would come off the clock because of the order she made that day to replace counsel. So the existing exclusion remains in place. Any other time does not come off the clock and the clock would start running. I think that is borne out both by the later explanation in the NUNC protunc order, but also if we look at how the Court interacted with the defense on November 29th during that hearing, the Court specifically asked the defense if it understands that when the original attorney filed a motion to continue that it was granted and at that time Mr. Efthimiadis' trial counsel agreed, yes, he understood that there had been a motion that was granted and that explains his challenges simply that the order was not sufficiently fulsome. So I think if we look at what happened on September 4th in the context of how the parties discussed it thereafter, while the wording is obviously less than ideal, I think it appears that what the Court meant to communicate to the defense is that there would be no further continuances, not that somehow by making a comment in court she was undoing the previously granted continuance. I have one other question about the calculation of the Speedy Trial Act. Both counsel assume that the Speedy Trial Act calculation starts with the date of the indictment, but the statute says the later of the indictment or, quote, the date the defendant has appeared before a judicial officer of the court in which such charge is pending. Here there was an arraignment on May 4th and the defendant signed a waiver of arraignment. I believe there's case law, not in this circuit, but outside this circuit, treating a waiver of arraignment as tantamount to a first appearance. Is it the government's position that the Speedy Trial Act time starts from the indictment when a defendant doesn't personally appear for the arraignment by virtue of a waiver of arraignment? No, Your Honor. I think we would agree that the arraignment could be the period considered. In this case, although there was a change in the provision of the statute between the complaint and the indictment because there had been a complaint prior to this indictment on which the defendant had appeared, that is why the government started with the indictment date as the start of the Speedy Trial Clock. And I'm not following that. What statutory provision are you relying on to track the complaint as opposed to the indictment? I believe we're looking at the Speedy Trial Act provision saying it runs from the first appearance on the charge or the indictment since the defendant had appeared on what was essentially the same charge, a different subsection, but essentially the same charge we started from the date of the indictment. Your Honor could be correct that that's actually an error in the defense's favor in this case, and the clock should have started with the arraignment time. And what is it to make of the defendant's argument that the real reason for the delay here was court congestion with the email from the courtroom deputy saying that the earliest the court could try this case would be November 26th? Well, I think there are two factors at play, Your Honor. I think there's no question that the court did have any other trials scheduled, and that's part of why the court was looking at the December timeframe. But I think the record also shows the court had great concern initially expressed during the September 4th hearing about the amount of time necessary for a defense attorney to be ready for trial. While I agree that the case law would suggest if the continuance were only for the benefit of the court calendar, that would not be sufficient, but I think here the underlying reason supporting the timeframe allowed in this case was preparation of the defense. And that's really borne out, as I think Judge Jacobs alluded to in his question, by how the time was used between voir dire and the start of evidence. The defense filed motions for release from custody. There was ultimately what was in fact a suppression motion that even defense counsel admitted could have been filed with no investigation much earlier in the case that was filed during that time period. So many of the things we would think would normally be part of pretrial preparation actually took place during this window that the court had allowed, essentially in a compromise by allowing the trial to start, keeping the defendant satisfied that things were moving promptly while still giving counsel time to prepare and file necessary motions. And, Your Honors, I apologize, but I believe I am close to the end of my time unless there are further questions. Thank you very much. We'll turn to counsel for appellants who has two minutes reserved. Counsel? Counsel? My apologies, Your Honors. I realized that I started talking and was still on mute. So the record does reflect at JA-33 that, in fact, on September 4th, defense counsel went out of his way to clarify that the clock would, in fact, begin ticking that day because the court's initial response was unclear as to what she intended. Therefore, defense counsel asked, in other words, the clock would begin ticking again today. The court responded it would. So the record is clear that, on September 4th, the court amended court order if one, in fact, existed prior to that to exclude time, which there's nothing on the record suggesting it. But if one had existed, she amended that effective September 4th and clearly stated the time would begin ticking again that day. Furthermore, though the defense counsel, new defense counsel, of course, vigorously defended the defendant right up until the time of presentation of evidence, he at no time requested time to an exclusion under the Speedy Trial Act for that defense, and it is not fair to ascribe that to him. And counsel, prior to the jury drawn on October 3rd, if the defense knew that the court had, the defense did know that the court had set trial to start 63 days later, if the defense believed that absent Speedy Trial Act findings, this violated the Speedy Trial Act, why didn't the defense alert the court to this issue? Your Honor, I think the Second Circuit case law is clear that it is not the job of the court to this issue. It is not the job of the defendant to police this issue. It is the job of the court to police this issue and the prosecutors to police this issue. It is not the defendant's responsibility, and they have no affirmative obligation to do so. And what are we to make of the emails in the record that when the courtroom says perfect for me? Defense counsel explains that in the record, and it's really self-explanatory, perfect for me, meaning that it suited his availability from that perspective. But the defense counsel's availability does not end or resolve the inquiry for an ends of justice exclusion of time. How long would you figure it would be reasonable to toll the clock for the ends of justice for the appointment of new counsel before a criminal trial? Your Honor, because I think you're arguing for zero extension, which is quite a job to get ready in no time. Your Honor, what we're arguing for is that this court has made clear that in prior precedent in Fox, for example, that a six day, a seven day, an 11 day, perhaps even a 28 day timeframe between jury draw and the presentation of evidence would not be an impermissible start and stop plan. Any of those periods of time would have been sufficient for defense counsel to prepare for what is really a day, day and a half long trial. It's just not a particularly complicated matter. In fact, defense counsel made absolutely no objection to proceeding to jury draw in early October. I do believe that my time is up, so unless the court has further questions, I will conclude with our request that a motion to dismiss the indictment be granted with prejudice. Thank you, counsel. Thank you both. We'll reserve decision.